1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES BRYANT PHIFER,
                                      No. CIV S-07-0747 LKK DAD PS
11            Plaintiff,

12       v.

13   SACRAMENTO HOUSING &
     REDEVELOPMENT AGENCY and
14   ANNE MOORE,                      ORDER AND

15            Defendants.             FINDINGS AND RECOMMENDATIONS

16   _____/

17           This matter came before the court on December 19, 2008 for hearing of

18   defendants' motion for summary judgment (Doc. No. 54) and plaintiff's counter-motion for

19   summary judgment or, in the alternative, for further discovery (Doc. No. 69).  Plaintiff James B.

20   Phifer appeared in propria persona, and Wendy M. Motooka, Esq. appeared for defendants.  Oral

21   argument was heard, and the motions for summary judgment were taken under submission.

22           On April 2, 2009, plaintiff filed a motion to amend his complaint (Doc. No. 76).

23   The United States of America was granted leave to appear as amicus curiae in opposition to

24   plaintiff's motion to amend.  At the hearing of the motion on May 15, 2009, plaintiff appeared in

25   propria persona, and Wendy Motooka appeared for defendants.  Oral argument was heard, and

26   that motion was then taken under submission as well.

                                          1

1    Also pending before the court are plaintiff's request for a deposition transcript at

2    court expense (Doc. No. 68), plaintiff's "Notice of Claim of Unconstitutionality of Federal Law"

3    (Doc. No. 88), and the ex parte application of the United States for an extension of the deadline

4    to move to intervene with regard to plaintiff's claim of unconstitutionality (Doc. No. 92).  By this

5    order and findings and recommendations, the undersigned addresses all pending matters.

6                            **PLAINTIFF'S MOTION TO AMEND**

7    **I.  Legal Standards Applicable to a Motion to Amend**

8    Plaintiff seeks leave to amend pursuant to Federal Rule of Civil Procedure 15.  As

9    plaintiff concedes, once a party has been served with a responsive pleading, the party may amend

10   its pleading "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P.

11   15(a).  Rule 15 provides that "[t]he court should freely give leave when justice so requires."  Fed.

12   R. Civ. P. 15(a)(2).  Although the decision whether to grant or deny a motion to amend is within

13   the district court's discretion,[1] the provision that leave to amend should be freely given when

14   justice so requires has been described by the Supreme Court as a mandate to be heeded.  Foman

15   v. Davis, 371 U.S. 178, 182 (1962).  "In exercising its discretion with regard to the amendment

16   of pleadings, 'a court must be guided by the underlying purpose of Rule 15 – to facilitate

17   decision on the merits rather than on the pleadings or technicalities.'"  Eldridge v. Block, 832

18   F.2d 1132, 1135 (9th Cir. 1987) (quoting United States v. Webb, 655 F.2d 977, 979 (9th Cir.

19   1981)).

20   The liberal policy in favor of amendments is, however, subject to limitations.  In

21   determining whether to grant a motion to amend, the court considers such factors as undue delay,

22   bad faith or dilatory motive, prejudice to the opposing party, and futility.  Manzarek v. St. Paul

23   Fire & Marine Ins. Co., 519 F.3d 1025, 1034 (9th Cir. 2008); DCD Programs, Ltd. v. Leighton,

24   _____

25   [1]  The district court's denial of leave to amend a complaint is reviewable only for abuse of
     discretion.  M/V Am. Queen v. San Diego Marine Const. Corp., 708 F.2d 1483, 1492 (9th Cir.
26   1983) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)).

833 F.2d 183, 186 (9th Cir. 1987); California Architectural Bldg. Prods. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1472 (9th Cir. 1987).  "Prejudice to the opposing party is the most important factor."  Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971)).  Prejudice may be found if the proposed amendments would force the defendants to participate in additional discovery. Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  Extending or reopening discovery can create both prejudice and undue delay.  Solomon v. N. Am. Life & Cas. Ins. Co., 151 F.3d 1132, 1139 (9th Cir. 1998).  Where the moving party seeks to amend its complaint to add a party, avoiding prejudice to the party to be added must also be a major objective.  DCD Programs, Ltd., 833 F.2d at 187.  Finally, leave to amend may properly be denied where the proposed amendment would be futile or where the amended complaint would be subject to dismissal.  Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).

Defendants argue correctly that Federal Rule of Civil Procedure 16 must be applied when a party seeks leave to amend after the court has issued a scheduling order and the deadlines have passed for joining other parties, amending pleadings, and/or filing motions.  Once the court has filed a pretrial scheduling order pursuant to Rule 16, with a timetable for amending pleadings, a motion for leave to amend is governed first by the standards of Rule 16(b) and only secondarily by Rule 15(a) if the Rule16(b) standards are met.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-08 (9th Cir. 1992).

Under Rule 16, the court is required to issue a scheduling order as soon as practicable, and the order "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(3)(A).[2]  Once a scheduling order has been filed pursuant to Rule 16, the "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Rule 16(b)'s 'good cause' standard primarily

---

[2]  A scheduling order may, but is not required to, set dates for pretrial conferences and for trial.  Fed. R. Civ. P. 16(b)(3)(B).

1  considers the diligence of the party seeking the amendment." <u>Johnson</u>, 975 F.2d at 609.  If the

2  moving party fails to demonstrate diligence, "the inquiry should end." <u>Id.</u> (affirming district

3  court's denial of motion to amend made four months after cut-off date for amendment had

4  expired and diligence was not shown).

5  **II. <u>Application</u>**

6        The undersigned finds that plaintiff has not made a showing of diligence and has

7  not met his burden of demonstrating good cause to modify the pretrial scheduling order in this

8  case with respect to the cut-off dates for amendment of pleadings, joinder of parties, discovery,

9  and law and motion practice.  On January 22, 2008, the court's Status (Pretrial Scheduling) Order

10  was filed pursuant to Federal Rule of Civil Procedure 16.[3]  Under the heading "JOINDER OF

11  PARTIES/AMENDMENTS," the order provides that "[n]o further joinder of parties or

12  amendments to pleadings is permitted except with leave of court, good cause having been

13  shown." (Status (Pretrial Scheduling) Order (Doc. No. 27) at 2.)  Under the heading "MOTION

14  HEARING SCHEDULES," the order provides that all law and motion, except as to discovery,

15  "shall be conducted so as to be <u>completed</u> by **December 19, 2008**," with "completed" meaning

16  that non-discovery motions must be heard on or before December 19, 2008.  (<u>Id.</u> (emphasis in

17  original).)  Under the heading "DISCOVERY," the order provides that all discovery shall be

18  conducted so as to be completed by October 31, 2008, with "completed" meaning that all

19  depositions have been taken and any disputes shall have been resolved by appropriate order if

20  necessary and, where discovery has been ordered, the order has been complied with.  (<u>Id.</u> at 4.)

21  /////

22

23        [3]  Upon the filing of an answer by the defendants, the court set a Status (Pretrial
Scheduling) Conference pursuant to Rule 16 (Doc. No. 19).  The order setting status conference

24  required each party to file a status report addressing such topics as possible joinder of additional
parties, expected or desired amendment of pleadings, anticipated discovery, and anticipated

25  motions.  Plaintiff's report indicated a "possibility of joining other parties" and a "possibility that
Plaintiff's pleadings need amending," and he anticipated "filing various motions as the need

26  arises." (Pl.'s Status Report (Doc. No. 23) at 2.)  Plaintiff participated in the status conference
held on January 18, 2008, and did not object to the dates proposed by the court.

1        Plaintiff's motion to amend his complaint was filed more than fourteen months

2  after the court ordered that there would be no further joinder of parties or amendment to

3  pleadings, absent a showing of good cause.  The motion to amend was filed more than five

4  months after discovery closed and more than three months after law and motion closed in this

5  action.  The parties' motions for summary judgment had been briefed and argued in a timely

6  manner and were already submitted for decision.  Plaintiff noticed his motion to amend for

7  hearing on May 15, 2009, just 45 days before the scheduled Final Pretrial Conference.  Plaintiff's

8  belated motion to amend did not allow sufficient time to resolve that motion and the already

9  pending summary judgment motions prior to Final Pretrial Conference.  Accordingly, the dates

10  set for Final Pretrial Conference and jury trial were vacated.

11        Plaintiff's motion to amend does not mention good cause or make a showing of

12  diligence.  Plaintiff merely states that he is amending his complaint to add a defendant and

13  additional allegations and argues that his motion should be granted in the interest of justice.

14  Plaintiff asserts that he is a member of a protected class of persons in that he is black and

15  disabled and the Department of Housing and Urban Development (HUD) has a statutory duty to

16  ensure that programs within its control or receiving federal financial assistance are administered

17  in a manner that prevents discrimination based on race or disability.

18        Plaintiff did not file a reply to defendants' opposition to his motion or to the brief

19  filed by the United States as amicus curiae.  The undersigned has examined plaintiff's proposed

20  amended complaint in order to determine whether good cause is discernible in the pleading.  It is

21  not.  The proposed amended complaint contains extensive allegations and claims that differ

22  substantially from the claims set forth in plaintiff's original pleading in this case.  In the original,

23  and still the operative, pleading, the sole defendants are Sacramento Housing and Redevelopment

24  Agency (SHRA) and that agency's director, Anne Moore.  Plaintiff filed a separate action against

25  the United States Department of Housing and Urban Development (HUD) regarding the agency's

26  investigation of his EEO complaint against SHRA.  Plaintiff filed his case against HUD in the

1   United States District Court for the District of Columbia.  That case was transferred to the

2   Eastern District of California and was related to his case against SHRA and its director.  The

3   court takes judicial notice of plaintiff's related case, Phifer v. United States Department of

4   Housing and Urban Development (HUD), case No. CIV S-08-0299 LKK DAD PS.[4]

5          In plaintiff's original complaint against defendants SHRA and Moore, he asserts

6   two claims arising under the Fair Housing Act, the Americans With Disabilities Act, the

7   Rehabilitation Act, and Title VI of the Civil Rights Act.  In the first claim, he alleges that in

8   November 2005, while renting an apartment through the SHRA conventional housing program,

9   he requested a unit transfer as a reasonable accommodation but his request was denied based on

10  his race and disability.  In the second claim, plaintiff alleges that the defendants discriminated

11  against him based on race and disability when they changed his enrollment date on a waiting list

12  for a federal voucher program so that he could not obtain housing through that program.  Plaintiff

13  seeks five million dollars in actual and punitive damages, as well as an injunction preventing

14  defendants from changing enrollment dates in the future.

15         Plaintiff's proposed new defendant is Irenis Green, an Equal Opportunity

16  Specialist employed by HUD in its San Francisco Office.  In a lengthy and confusing statement

17  of jurisdiction, plaintiff invokes the same federal statutes identified in his operative pleading and

18  asserts claims arising under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18

19  U.S.C. §§ 1964-1965, and conspiracy claims under 42 U.S.C. § 1985(2) and (3).  Plaintiff asserts

20  that all of the statutes cited "are constitutionally deficient because HUD is not included in the

21  nondiscriminatory clause of the acts in violation of the First Amendment clause that Congress

22  shall make no law that abridges the right to bring grievances for redress before the courts."  He

23  claims that the federal statutes cited are in conflict with the First, Fifth, Eleventh, and Fourteenth

24  Amendments.  In an even longer and more confusing statement of allegations, plaintiff reiterates

25

26         [4] A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

6

his claim that he was denied reasonable accommodation.  He also offers vague and conclusory

allegations about conspiracy, racism, and hate crimes, and realleges his claim that defendants

changed his enrollment date for the voucher program to prevent him from receiving housing

services.  Plaintiff alleges at length that SHRA conspired with other agencies to harm him and

his relatives in numerous ways, ranging from torturing and poisoning plaintiff to murdering one

of his nephews.  The allegations against proposed defendant Green are that she "fabricated"

HUD's investigative report, conspired with unidentified SHRA employees, lied about her

interview with plaintiff, and failed to "turn in" evidence she had gathered.[5]  Plaintiff seeks an

order requiring that all of the statutes cited be amended and that he be awarded compensatory,

statutory, and punitive damages of five million dollars each from SHRA and Ms. Green.

Plaintiff does not explain his delay in moving to amend his complaint in this

action.  Plaintiff has not alleged newly discovered facts, but his proposed amendments would

substantially alter the basis for this action and would necessitate extensive additional discovery.

Granting plaintiff leave to amend would unduly delay a ruling on the cross-motions for summary

judgment that were pending when the motion to amend was filed.  The present defendants and

the proposed new defendant would be severely prejudiced.  Moreover, it appears that plaintiff's

motion to amend has been brought for purposes other than facilitating a decision on the merits of

his claims against SHRA and its director.  On March 19, 2009, two weeks prior to the filing of

plaintiff's untimely motion to amend, plaintiff's case against HUD was dismissed for lack of

subject matter jurisdiction.  The proposed amendments to this case suggest that plaintiff seeks to

pursue his dismissed claims against HUD in this case.

The undersigned finds that plaintiff has failed to meet Rule 16(b)'s good cause

standard.  The motion to amend will be denied on that ground.  Even if plaintiff had met that

---

[5] These allegations were made in plaintiff's related case.  (See case No. CIV S-08-cv-0299 LKK DAD PS, Findings & Recommendations filed Feb. 2, 2009 (Doc. No. 26), at 2-3 (summarizing plaintiff's claims against HUD).)

1 standard, the undersigned would deny the motion because of undue delay and prejudice to current

2 and proposed defendants.  Although it is unnecessary to discuss additional reasons for denying

3 plaintiff's motion, the undersigned finds it probable that filing the proposed amended complaint

4 would be futile, as some or all of plaintiff's proposed new RICO, conspiracy, and federal tort

5 claims appear to be subject to dismissal on various grounds.

6 **III.  Matters Related to Plaintiff's Motion to Amend**

7       After the hearing of plaintiff's motion to amend, plaintiff filed a "Notice of Claim

8 of Unconstitutionality of Federal Law."  Plaintiff states that he has filed this notice pursuant to

9 Local Rule 24-132 to notify the Clerk that the following statutes are unconstitutional:  Title III of

10 the Civil Rights Act of 1968 (Fair Housing Act); Title II of the Americans With Disabilities Act

11 of 1990; § 504 of the Rehabilitation Act of 1973; and Title VI of the Civil Rights Act of 1964.

12       Plaintiff's reliance on Local Rule 24-132 is misplaced.  The rule applies when a

13 party "draws in issue the constitutionality of a federal administrative regulation of general

14 applicability" and requires the party to "file a notice . . . identifying the regulation in issue."

15 Local Rule 24-132(a) (emphasis added).  Plaintiff is not challenging federal administrative

16 regulations.

17       Plaintiff asserts that all of the statutes he has listed are unconstitutional "[a]s the

18 Acts relate to the Department of Housing and Urban Development."  The operative complaint in

19 this action does not name the United States of America, HUD, or any HUD employee as a

20 defendant.  Nor does that complaint allege that any statute is unconstitutional as it relates to

21 defendants SHRA and Moore.  Plaintiff's motion to amend his complaint to join a HUD

22 employee as a defendant has been denied.  Because plaintiff's notice of unconstitutionality does

23 not assert that the statutes are unconstitutional as they apply to defendants SHRA and Moore, the

24 notice is irrelevant to this case and will be disregarded.  The ex parte application of the United

25 States of America for an extension of the deadline to move to intervene is therefore moot.

26 /////

**THE PARTIES' MOTIONS RELATED TO SUMMARY JUDGMENT**

**I. <u>Legal Standards Applicable to a Motion for Summary Judgment</u>**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). <u>See also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Owen v. Local No. 169</u>, 971 F.2d 347, 355 (9th Cir. 1992).

> A party moving for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Where the party moving for summary judgment will bear the burden of proof at trial, the party must come forward with evidence that would entitle it to a directed verdict if the evidence were uncontroverted at trial. <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th Cir. 1992). Put another way, the party must establish the absence of a genuine issue of fact on each issue material to its claim. <u>Id.</u> at 1537.

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Celotex Corp.</u>, 477 U.S. at 323. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>See</u> <u>id.</u> at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> Summary judgment should then be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323.

1    　　　　If the moving party meets its initial responsibility, the burden then shifts to the

2    opposing party to establish that a genuine issue as to any material fact actually does exist.

3    Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of

4    Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607

5    F.2d 1276, 1280 (9th Cir. 1979).   The opposing party must demonstrate that a fact in contention

6    is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that

7    the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

8    the nonmoving party.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec.

9    Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).   Thus, the

10   "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see

11   whether there is a genuine need for trial.'"   Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P.

12   56(e) advisory committee's note on 1963 amendments).

13   **II.  Plaintiff's Motion for Summary Judgment**

14   　　　　Plaintiff will bear the burden of proof on his claims at trial.   As set forth above, a

15   plaintiff who moves for summary judgment must produce evidence that would entitle him to a

16   directed verdict on his claims if he produced the same evidence at trial and the evidence was not

17   controverted by the defendants.   Houghton v. South, 965 F.2d 1532, 1536 (9th Cir. 1992).

18   Plaintiff is entitled to summary judgment only if he establishes the absence of a genuine issue of

19   fact on all issues material to each of his claims.   Id. at 1537.

20   　　　　Plaintiff alleges two claims against defendants SHRA and Moore.   His first claim

21   is that defendants violated the Fair Housing Act, the Americans With Disabilities Act, the

22   Rehabilitation Act, and the Civil Rights Act when they denied his request for reasonable

23   accommodation in the form of a unit transfer in November 2005.   His second claim is that

24   defendants violated the same statutes when they changed his enrollment date on a waiting list for

25   a federal voucher program to prevent him from obtaining housing through that program.   Plaintiff

26   alleges that both actions discriminated against him based on his race and disability.   Plaintiff

seeks five million dollars in damages and an injunction prohibiting defendants from changing enrollment dates for federal programs in the future.

As a party moving for summary judgment in his favor, plaintiff was required to comply with Local Rule 56-260, which provides that a motion for summary judgment "shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support of the motion and cite the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon to establish that fact." Local Rule 56-260(a). Plaintiff was also required to file all evidentiary documents cited in his motion for summary judgment, except for documents already filed. Id. Plaintiff's motion does not include a Statement of Undisputed Facts enumerating the material facts required to prove the elements of his claims. Although plaintiff has reproduced defendants' statement of undisputed facts for the purpose of opposing defendants' motion for summary judgment, the document does not enumerate specific material facts that establish the elements of plaintiff's claims.

Having considered plaintiff's complaint, all written materials submitted in connection with plaintiff's motion for summary judgment, and the parties' arguments in open court, the undersigned finds that plaintiff has not come forward with evidence that proves the alleged violations of his federal rights. Plaintiff has not presented evidence that would entitle him to a directed verdict if uncontroverted at trial. The undersigned will therefore recommend that plaintiff's motion for summary judgment be denied.

**III.  Plaintiff's Motion in the Alternative for Further Discovery**

    **A.  Legal Standards Applicable to Motions for Discovery Under Rule 56(f)**

The court may deny or continue a motion for summary judgment if the party opposing the motion seeks leave to obtain affidavits, take depositions, or undertake other discovery and "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(f). A party who files a Rule 56(f) motion cannot

1   complain if it failed to pursue discovery diligently before summary judgment. <u>Brae Transp., Inc.</u>

2   <u>v. Coopers & Lybrand</u>, 790 F.2d 1439, 1443 (9th Cir. 1986).

3            The party seeking additional discovery pursuant to Rule 56(f) bears the burden of

4   showing that there are specific facts it hopes to discover and that those facts will raise an issue of

5   material fact. <u>Harris v. Duty Free Shoppers Ltd. Partnership</u>, 940 F.2d 1272, 1276 (9th Cir.

6   1991). "The burden is on the party seeking to conduct additional discovery to put forth sufficient

7   facts to show that the evidence sought exists." <u>Volk v. D.A. Davidson & Co.</u>, 816 F.2d 1406,

8   1416 (9th Cir. 1987). <u>See also</u> <u>Hancock v. Montgomery Ward Long Term Disability Trust</u>, 787

9   F.2d 1302, 1306 n.1 (9th Cir. 1986) (holding that the party opposing summary judgment "has the

10  burden under Rule 56(f) to show what facts she hopes to discover to raise an issue of material

11  fact"). "Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is

12  almost certainly nonexistent or is the object of pure speculation." <u>Terrell v. Brewer</u>, 935 F.2d

13  1015, 1018 (9th Cir. 1991).

14       **B.  <u>Application</u>**

15           The briefing filed by plaintiff on December 5, 2008, contains three references to

16  incomplete discovery.  The first reference is found in plaintiff's statement of facts in opposition

17  to defendants' statement of undisputed facts.  In response to Undisputed Fact No. 6, which

18  quotes Dr. Conard's statement that the social situation at plaintiff's residence "is hostile and

19  hazardous" to plaintiff, plaintiff states that he "did not get to complete discovery, to obtain police

20  reports, and 911 call records and other information to prove that the situation had gone far

21  beyond neighbors not getting along."  The second reference to incomplete discovery is found in

22  plaintiff's brief at page 2.  Plaintiff states that he "did not get to complete discovery" and was

23  unable to determine whether he should "drop" defendant Moore from the suit.  The third

24  reference to incomplete discovery is found in plaintiff's declaration at pages 1 and 2 where

25  plaintiff asserts that he "did not have the opportunity to complete discovery" because he is

26  homeless and defendants "refused to completely comply with discovery request."  He states that

he "needed to complete discovery in order to obtain evidence to show that Defendants were involved in a conspiracy and to obtain information in support of the evidence Plaintiff already has, by Obtaining a complete copy of Plaintiff's tenant file from SHRA which would show that SHRA edited Plaintiff's file removing the pages from his original application showing what programs he signed up for in 1997 and other incriminating evidence."

Plaintiff has not set forth particular facts that he would expect to discover from specific discovery he would conduct if discovery were reopened, and he has not shown that any such facts would demonstrate the existence of a genuine issue of material fact related to the claims alleged in his complaint.  Additional evidence related to the situation in plaintiff's apartment complex would not establish that the requested transfer was required to accommodate a disability as that word is defined in the statutes plaintiff relies upon.  Plaintiff's complaint does not allege a conspiracy or a claim that defendants "edited" his file in some manner.  Finally, Rule 56(f) is not intended to assist a party in obtaining information that merely supports evidence already in the party's possession.  Plaintiff's failure to meet the requirements of Rule56(f) is a proper ground for denying additional discovery and proceeding to resolve the pending summary judgment motion brought by defendants.

Plaintiff has also failed to demonstrate that he pursued discovery diligently.  This action was commenced on April 19, 2007.  Plaintiff could have arranged for a review of his SHRA tenant's file at the commencement of the litigation.  At the very latest, he should have sought such review promptly after defendants' counsel advised him, in response to his request for production of documents in April 2008, that he could review the file and identify pages to be copied at his expense.  Plaintiff did not arrange to review the file until early October 2008.  He paid for and received more than forty pages of the file.

Pursuant to the scheduling order, the parties were required to conduct discovery so that it would be completed by October 31, 2008, with "completed" meaning that any disputes had been resolved by appropriate order and, where discovery had been ordered, the order had been

complied with.  On October 9, 2008, plaintiff filed a motion to compel concerning the copies he received after he reviewed his file, but he did not notice the motion for hearing.  After plaintiff was advised of the omission, plaintiff filed a notice of motion on October 20, 2008, by which he noticed his motion for hearing on October 31, 2008.  Discovery motions must be set for hearing "at least twenty-one (21) days from the date of filing" of the notice and motion.  Local Rule 37-251(a).  Since plaintiff's notice of motion set a hearing only eleven days from the date of filing the notice, the notice of motion was stricken and the motion was not placed on calendar.  On October 29, 2008, plaintiff filed a motion to extend the discovery deadline,[6] and on October 31, 2008, he filed a motion to compel with a notice of motion setting the hearing on November 21, 2008.  Plaintiff's motion to extend the discovery deadline was denied for failure to make a showing of good cause, and his October 31, 2008 motion to compel was denied as untimely.  These orders were affirmed by the district judge on plaintiff's request for reconsideration.

Plaintiff's Rule 56(f) motion should be denied because he has not shown what evidence he would attempt to discover if discovery were reopened, has not shown that the evidence he would seek actually exists, has not shown that any facts he might discover would establish disputed issues of material fact, and has not established that he pursued discovery diligently prior to the discovery deadline set long ago by this court.

**C. Plaintiff's Related Request for Deposition Transcript**

Prior to filing his countermotions and opposition to defendants' motion for summary judgment, plaintiff requested that the court furnish him with a copy of the transcript of his deposition.[7]  Plaintiff asserted that he could not purchase a copy of the transcript because of

---

[6] Plaintiff's motion to extend the discovery deadline did not indicate he was seeking any additional discovery other than the pages he believed were missing from the copies he received.

[7] Plaintiff refers to his deposition as "court ordered."  In this regard, after plaintiff failed to appear for his properly noticed deposition, defendants moved to compel him to appear for the re-noticed deposition.  Defendants' motion was granted, and plaintiff was ordered to appear for his deposition in accordance with defendants' notice.

1   his limited income, that denial of a copy would impinge on his constitutional rights, and that he

2   could not adequately respond to defendants' motion for summary judgment without having

3   access to all documents in the case.  (Pl.'s Request for Transcript (Doc. No. 68) at 2.)

4          Although plaintiff was granted leave to proceed in forma pauperis in this case, it

5   is well established that "'the expenditure of public funds [on behalf of an indigent litigant] is

6   proper only when authorized by Congress.'"  Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989)

7   (quoting United States v. MacCollom, 426 U.S. 317, 321 (1976)).  The expenditure of public

8   funds for deposition transcripts is not authorized by the in forma pauperis statute or any other

9   statute.  See 28 U.S.C. § 1915.  Plaintiff's request for a copy of the deposition transcript is

10  therefore denied.

11         The court notes that defendants' motion for summary judgment includes copies of

12  all pages of plaintiff's deposition that contain testimony relied upon in defendants' motion and

13  the complete original transcript was lodged with the court, as required by the Local Rules, and

14  could have been reviewed by plaintiff in the Clerk's Office.  (See Defs.' Notice of Lodging

15  Plaintiff's Deposition Transcript (Doc. No. 67).)  Moreover, any testimony that plaintiff gave

16  during his deposition could have been presented in opposition to defendants' motion by stating

17  the same testimony in a declaration properly signed under penalty of perjury.  Any testimony

18  relied upon by defendants could have been explained, clarified, or elaborated upon by plaintiff in

19  such a declaration.  Although plaintiff asserts in opposition to defendants' motion that the

20  excerpts relied upon by defendants are incorrect or altered, his assertions in this regard are

21  conclusory and unsupported.

22  **IV.  Defendants' Motion for Summary Judgment**

23         Defendants assert that there is no genuine issue as to any material fact and that

24  they are entitled to judgment as a matter of law because plaintiff cannot establish liability against

25  them for discrimination based on either race or disability under the Fair Housing Act, Title VI of

26  the Civil Rights Act, the Americans With Disabilities Act, or the Rehabilitation Act.

Defendants offer a statement of undisputed material facts supported by plaintiff's deposition testimony and the declarations, with attached exhibits, of MaryLiz Paulson, LaShelle Dozier, and Wendy Motooka.[8]  Defendants' evidence establishes the following:  (1) it was not possible for plaintiff to enroll in the Housing Choice Voucher (HCV)/Section 8 program in 1997 because the program waiting list was closed at that time; (2) plaintiff was added to the HCV/Section 8 program waiting list in March 2000; (3) plaintiff remains on the HCV/Section 8 program waiting list at the current time; (4) on November 17, 2005, plaintiff requested a transfer from the 3725 Cypress Street unit, as a reasonable accommodation for his disability; (5) plaintiff's verification of disability and need for accommodation form, signed by his physician, William J. Conard, M.D., states that plaintiff requires the reasonable accommodation of "1st story – No stairs" for physical accessibility; (6) Dr. Conard wrote on the same form under "Other Accommodations" that "Social situation at current residence is hostile & hazardous to Mr. Phifer."; (7) when asked to explain how the recommended accommodation would address plaintiff's disability-related need, Dr. Conard wrote "Need to change residence to escape current environment."; (8) by letter dated December 5, 2005, SHRA's Reasonable Accommodation Committee disapproved plaintiff's request for transfer because he was already housed in a ground floor unit with no stairs and Dr. Conard had not sufficiently explained how plaintiff's transfer would serve a disability-related need; (9) SHRA offered to review additional medical verification if plaintiff submitted any; (10) neither plaintiff nor his physician supplied additional medical documentation to the Reasonable Accommodation Committee; (11) plaintiff testified

---

[8]  The declarants are:  (1) Wendy Motooka, defendants' counsel, who took plaintiff's deposition on September 4, 2008 and declares that the portions of the transcript attached to her declaration are true and correct copies of that transcript; (2) MaryLiz Paulson, Assistant Director of SHRA since March 2006, who manages SHRA staff and the processes necessary to implement and maintain the Housing Choice Vouchers program in compliance with federal regulations; and (3) LaShelle Dozier, Interim Executive Director of SHRA since January 1, 2008 and former Housing Authority Director for the Housing Choice Vouchers program from April 19, 2004 to January 1, 2008, who insured that the process was carried out consistently and who sat on the Reasonable Accommodation Committee when plaintiff filed his request for reasonable accommodation.

during his deposition that his apartment was not satisfactory because he had trouble with his neighbors; (12) it is SHRA's policy not to grant transfer requests solely as an accommodation for neighbors who do not get along; (13) plaintiff is unable to point to any evidence in support of his allegation that his transfer request was denied based on his race, and he could not explain at his deposition why he believes that he suffered from racial discrimination.

The Fair Housing Act (FHA) prohibits discrimination against "any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin," 42 U.S.C. § 3604(b), or "because of a handicap," 42 U.S.C. § 3604(f)(2).

To prove a race discrimination claim under the FHA, the plaintiff must establish a prima facie case, which consists of two elements:  (1) plaintiff's rights are protected under the FHA and (2) as a result of defendants' discriminatory conduct, plaintiff has suffered a distinct and palpable injury.  Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999).  For a claim of race discrimination, the language of the statute expressly requires the plaintiff to prove that the discrimination was "because of race."  42 U.S.C. § 26-4(b).  Defendants argue that plaintiff cannot show that his transfer request was refused because of his race or for any other discriminatory reason.  Defendants contend that plaintiff's trouble with his neighbors was not a proper basis for seeking a transfer and therefore plaintiff cannot show that SHRA's denial of his request was based on his race.  Similarly, defendants argue that plaintiff cannot show race discrimination with regard to the alleged alteration to his HCV Program enrollment date.  Defendants cite their evidence that plaintiff was enrolled in the HCV program on or about March 2000 and remains on the list to this day.  Defendants argue that plaintiff could not have joined the HCV waiting list in 1997, as he contends, because the waiting list was closed at that time.  Defendants contend that plaintiff is mistaken in his belief that he enrolled in the HCV program at the same time he applied for conventional housing, and in fact his HCV program enrollment date has never been changed.

1    To prove a disability discrimination claim under the FHA, the plaintiff must

2 establish four elements:  (1) plaintiff suffers from a handicap as defined by statute, (2) the

3 defendants knew of the handicap or should reasonably have been expected to know of it, (3)

4 accommodation of plaintiff's handicap may be necessary to afford him an equal opportunity to

5 use and enjoy the dwelling, and (4) defendants refused to make such accommodation.  United

6 States v. Cal. Mobile Home Park Mgmt., 107 F.3d 1374, 1380 (9th Cir. 1997).  For a claim of

7 disability discrimination, the plaintiff must prove that the defendants denied him an equal

8 opportunity to use and enjoy a dwelling by refusing to accommodate his disability.  Defendants

9 argue that plaintiff cannot show discrimination based on his disability because SHRA did not

10 refuse to accommodate a known disability.  Plaintiff's Verification of Disability and Need for

11 Accommodation form indicates that he requires an apartment on the first, or ground, floor for

12 purposes of his physical accessibility, and SHRA had already accommodated his need by placing

13 him in a first floor unit with no stairs.  No further transfer was justified based on the need for first

14 floor housing.  Although Dr. Conard indicated that plaintiff needed "to change residence to

15 escape current environment," the doctor did not explain what the need was or how the transfer

16 would accommodate the need.  Defendants understand plaintiff to believe that the requested

17 transfer was related to his disability because the situation with his neighbors was detrimental to

18 his general health and anything that affects his health affects his disability.  Defendants contend

19 that the transfer request was properly denied because it did not appear to serve his disability.

20 Defendants cite plaintiff's failure to submit additional evidence documenting some disability that

21 was affected by his living situation.

22    To prove a claim for damages under Title VI, 42 U.S.C. § 2000(d), the plaintiff

23 must show that the entity involved is engaging in racial discrimination and the entity is receiving

24 federal financial assistance.  Fobbs v. Holy Cross Health System Corp., 29 F.3d 1439, 1447 (9th

25 Cir. 1994), overruled on other grounds by Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d

26 1131 (9th Cir. 2001).  Defendants argue that plaintiff's Title VI claim fails because he cannot

1   show that defendants were engaging in racial discrimination.

2              To prove that a public program or service violated Title II of the Americans With

3   Disabilities Act (ADA), 42 U.S.C. § 12132, the plaintiff must show that (1) he is a "qualified

4   individual with a disability," (2) he was either excluded from participation in or denied the

5   benefits of a public entity's services, programs, or activities, or was otherwise discriminated

6   against by the public entity, and (3) such exclusion, denial of benefits, or discrimination was by

7   reason of his disability. Duvall v. County of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001);

8   Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).

9   Defendants argue that plaintiff cannot show that he was excluded from participation in or denied

10  any benefits by SHRA.  Defendants contend that, to the contrary, plaintiff participated in

11  SHRA's conventional housing program for eight years and his name has been on the HCV

12  program waiting list since March 2000.

13             To make out a prima facie claim under Section 504 of the Rehabilitation Act, 29

14  U.S.C. § 794, the plaintiff must show that (1) he is an individual with a disability; (2) he is

15  otherwise qualified to receive the benefits at issue; (3) he was denied the benefits of the program

16  solely because of his disability; and (4) the program receives federal financial assistance. Zukle

17  v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 (9th Cir. 1999).  Defendants argue that the

18  undisputed facts demonstrate that plaintiff cannot show that defendants denied him the benefits

19  of a program or that he was denied a benefit solely by reason of his disability.

20             Defendants also argue that punitive damages are not available against

21  municipalities, counties, or other governmental entities unless expressly authorized by statute and

22  that the statutes relied upon by plaintiff do not expressly authorize punitive damages.  For these

23  reasons, defendants ask that plaintiff's request for punitive damages be denied.  In City of

24  Newport v. Fact Concerts, Inc., 453 U.S. 247, 260-66 (1981), the Supreme Court ruled that a

25  municipality is not liable for damages under 42 U.S.C. § 1983 based on the general rule that

26  punitive damages are not allowed against a municipality unless such award is expressly

1  authorized by statute.  For the same reason, punitive damages may not be awarded in suits

2  brought under Title VI, Title II of the ADA, or § 504 of the Rehabilitation Act.  Barnes v.

3  Gorman, 536 U.S. 181, 188-89 (2002).  Nor has Congress expressly authorized awards of

4  punitive damages under the FHA.  Inland Mediation Bd. v. City of Pomona, 158 F. Supp. 2d

5  1120, 1158 (C.D. Cal. 2001).

6          Defendants argue finally that plaintiff lacks standing to seek an injunction for the

7  purpose of "preventing Defendants from changing enrollment dates to federal programs in the

8  future."  Defendants assert that plaintiff cannot prove that he or anyone else has ever had his

9  enrollment date changed by SHRA and cannot show a real and immediate threat that SHRA will

10  change his enrollment date on the HCV waiting list.  On these grounds, defendants request that

11  plaintiff's request for injunctive relief be dismissed.

12          As required by the standards applicable to motions for summary judgment,

13  defendants have identified portions of the pleadings, materials obtained through discovery, and

14  affidavits that demonstrate the absence of a genuine issue of material fact as to each of plaintiff's

15  stated grounds for relief.  The burden thus shifts to plaintiff to establish that a genuine issue as to

16  any material fact actually does exist.  Plaintiff must demonstrate that any fact in contention is

17  material, i.e., it might affect the outcome of the suit under the governing law, and that the dispute

18  is genuine, i.e., the evidence might lead a reasonable jury to return a verdict for plaintiff.

19          After careful consideration of the pro se plaintiff's briefing and defendants' reply,

20  the undersigned finds that plaintiff's opposition fails to establish that a genuine issue of material

21  fact exists.

22          As an initial matter, plaintiff's statement of facts in opposition to defendants'

23  statement of undisputed facts does not comply with Local Rule 56-260(b), which requires that

24  the party opposing summary judgment reproduce each fact enumerated in the moving party's

25  statement of undisputed facts and expressly admit or deny each fact.  As to each fact denied, the

26  opposing party must cite evidence that supports the denial and produce the evidence if it has not

already been filed.  Here, plaintiff has neither admitted nor denied any fact.  In response to some of defendants' undisputed facts, plaintiff offers responses such as "Defendants are being deceptive," "Plaintiff has no knowledge," and "No comment."  In response to other facts, he offers tangential information, argument, or evidence not probative with respect to the undisputed fact asserted by defendants.  Plaintiff's supporting declaration is devoted entirely to complaints about his deposition transcript and his failure to complete discovery. The exhibits attached to plaintiff's declaration provide no evidence of race or disability discrimination.

On this record, there is not a scintilla of evidence that supports a finding that defendants discriminated against plaintiff on the basis of race or disability in violation of any of the statutes plaintiff relies upon.  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact" precluding summary judgment); see also Summers v. A. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997).  In the absence of any evidence of a disputed issue of material fact regarding plaintiff's claims, the undersigned finds that defendants are entitled to summary judgment on all claims.  After adequate time for discovery, plaintiff has failed to make a showing sufficient to establish the existence of any disputed issue of fact regarding elements essential to his claims and on which he would bear the burden of proof at trial.  There is no genuine need for trial.

## CONCLUSION

For the reasons set forth above, the undersigned recommends that defendants' motion for summary judgment be granted as to all claims.  With this recommendation, plaintiff's motion for a ruling on his motion is rendered moot.

IT IS ORDERED that:

1.  Plaintiff's November 19, 2008 request for a copy of his deposition transcript at court expense (Doc. No. 68) is denied;

/////

1      2.  Plaintiff's April 2, 2009 motion to amend complaint and join a party (Doc. No.

2  76) is denied, and the proposed amended complaint (Doc. No. 77) shall be disregarded;

3      3.  Plaintiff's June 19, 2009 motion for a ruling on his motion for summary

4  judgment (Doc. No. 87) is moot;

5      4.  Plaintiff's June 24, 2009 notice of claim of unconstitutionality (Doc. No. 88)

6  shall be disregarded;

7      5.  The August 26, 2009 ex parte application of the United States for an extension

8  of time to file a motion to intervene (Doc. No. 92) is moot; and

9      IT IS RECOMMENDED that:

10      1.  Plaintiff's December 5, 2008 motion for summary judgment or, in the

11  alternative, to complete discovery (Doc. No. 69) be denied;

12      2.  Defendants' November 4, 2008 motion for summary judgment (Doc. No. 54)

13  be granted; and

14      3.  This action be dismissed with prejudice.

15      These findings and recommendations will be submitted to the United States

16  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

17  ten (10) days after being served with these findings and recommendations, any party may file

18  written objections with the court.  A document containing objections should be titled "Objections

19  to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed

20  within seven days after the objections are served.  The parties are advised that failure to file

21  objections within the specified time may, under certain circumstances, waive the right to appeal

22  the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

23  DATED: September 9, 2009.

24

25

DAD:kw
26  Ddad1\orders.prose\phifer0747.oah.xmsj.f&r2

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE